IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

SUZANNE HARRELL,

    Plaintiff,

v.                               CASE NO. 4:06cv362-RH/WCS

LARRY CAMPBELL, etc., et al.,

    Defendants.

_____/

## ORDER DENYING SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY

      This action under 42 U.S.C. §1983 arises from a traffic stop in which a law enforcement officer fired upon and wounded a suspect who was attempting to flee by driving away. The suspect claims the officer's use of force was constitutionally excessive. The officer has moved for summary judgment on the basis of qualified immunity. I deny the motion because resolving factual disputes in the suspect's favor, a jury could find the deputy's use of force violated clearly established law, as defined by a controlling Eleventh Circuit decision.

**I**

## **Facts**[1]

At approximately 11:00 p.m. on July 24, 2003, Leon County, Florida, Deputy Sheriff James Goodman, while on patrol in a marked law enforcement vehicle, observed plaintiff Suzanne Harrell driving a Volkswagen with a flat tire. There was little other traffic on the road, which Ms. Harrell describes as deserted and rural.  Deputy Goodman stopped Ms. Harrell and told her she could not drive on a flat tire.  Upon asking for and obtaining her driver's license, Deputy Goodman believed Ms. Harrell might be the suspect who had fled a fellow officer the previous evening.  He spoke to the fellow officer over the radio, and the conversation increased Deputy Goodman's suspicion Ms. Harrell was the same suspect.  (As it turns out, Ms. Harrell apparently *was* the same suspect.)  The other officer did not inform Deputy Goodman of the basis on which Ms. Harrell was sought the previous evening.  (As it turns out, she was sought in connection with an outstanding warrant for misdemeanor battery.)

Deputy Goodman asked Ms. Harrell for her keys, and when she asked why,

---

[1] There is a substantial dispute regarding the material facts.  The facts are set forth in the text of this order based on the sworn evidence in this record, with disputes resolved and all reasonable inferences drawn in plaintiff's favor, as appropriate in evaluating defendant's summary judgment motion.  *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).  Some of the disputes are noted in footnotes.

he tried to grab them. Failing in this attempt, he sprayed her face with a caustic spray. She started the car and drove forward. Deputy Goodman was holding her shirt but released it as she moved forward. Deputy Goodman was never stuck in or dragged by the car.[2] As Ms. Harrell was driving slowly away, at five to ten miles per hour, Deputy Goodman fired seven rounds without warning, one of which wounded her in the shoulder.[3]

Deputy Goodman returned to his car and gave chase. Ms. Harrell pulled over after driving approximately a mile at not more than 55 miles per hour; whether she reached that speed may be unclear. She refused to get out of the car until another officer arrived at the scene, at which time she was arrested.

As a result of these events, Ms. Harrell was charged in state court and pled guilty to battery on a law enforcement officer, resisting an officer with violence, and fleeing or attempting to elude an officer. The information charging Ms. Harrell in state court alleged that she was "dragging [Deputy Goodman] with a

---

[2] Deputy Goodman contends his arm was stuck and he was dragged, but Ms. Harrell denies this. For summary judgment purposes, I accept her testimony on this point.

[3] Ms. Harrell's affidavit does not explicitly say a warning was not given, but the affidavit's recitation of the facts does not refer to a warning, and her argument clearly states that none was given. Drawing an inference in her favor, I assume for purposes of this motion that no warning was given. My summary judgment ruling would be the same either way.

1989 Volkswagen."

## II
## Discussion

Ms. Harrell claims that Deputy Goodman's use of deadly force was unconstitutional.  She seeks an award of damages under 42 U.S.C. §1983 against Deputy Goodman in his individual capacity and against the Sheriff in his official capacity.  Deputy Goodman has moved for summary judgment on the basis of qualified immunity.

Public officers and employees sued under §1983 in their individual capacities are entitled to invoke the defense of qualified immunity.  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986); *see generally Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).  Thus a public officer or employee may be held individually liable only if his or her conduct violates clearly established law.

The constitutional standards governing an officer's shooting of a fleeing suspect are set forth in *Tennessee v. Garner*, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985).  There the Court held that an officer may use deadly force against a

fleeing suspect only if the officer (1) "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others," or "that he has committed a crime involving the infliction or threatened infliction of serious physical harm"; (2) reasonably believes the use of deadly force is necessary to prevent escape; *and* (3) has given some warning about the possible use of deadly force, if possible. *Garner*, 471 U.S. at 11-12.

In *Vaughan v. Cox*, 343 F.3d 1323, 1329-30 (11th Cir. 2003), the Eleventh Circuit held that in light of *Garner*, an officer who shot a fleeing suspect was *not* entitled to summary judgment based on qualified immunity. The officer had received a report that a red truck had just been stolen and was headed north on I-85 near Atlanta. The officer observed a red truck headed north on I-85 in the appropriate vicinity. The front-seat passenger fit the description of the thief. During an attempt to stop the truck using a rolling roadblock, the truck struck the officer's vehicle and fled at 85 miles per hour. After further efforts to stop the truck failed, the officer fired shots into the truck, striking the passenger.

The clearly established law on the underlying substantive issue of the constitutionality of shooting a fleeing suspect was the same at the time of the events at issue in *Vaughan* as at the time of the events at issue in the case at bar. If, as the Eleventh Circuit held in *Vaughan*, an officer is not entitled to summary

judgment based on qualified immunity under that clearly established law when he shoots into a truck occupied by unknown suspects, reasonably believed to have recently stolen the truck, after the truck has been driven into an officer's car and is fleeing on a major interstate highway at 85 miles per hour, then an officer is not entitled to summary judgment based on qualified immunity under the same clearly established law when he shoots a known suspect (whose driver's license the officer is holding) who is driving at a slow speed on a flat tire on a remote highway with little prospect of escape. *Vaughan* is controlling.

To be sure, three more recent decisions have upheld the qualified immunity defense of an officer who shot a suspect in a car. Each, however, involved a substantially greater and more imminent threat of serious physical injury. Under *Garner*, "a threat of serious physical harm, either to the officer or to others," is one of the prerequisites to the use of deadly force. *Garner*, 471 U.S. at 11.

In *Brosseau v. Haugen*, 543 U.S. 194, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004), an officer shot a suspect from behind as he fled in a car in a residential neighborhood. The officer reasonably believed the suspect posed an imminent danger to (1) the known occupants of two parked vehicles in his path, (2) officers who were known to be on foot in the immediate area, and (3) any other citizens who might be nearby.

Similarly, in *Robinson v. Arrugueta*, 415 F.3d 1252 (11th Cir. 2005), *cert. denied*, 126 S. Ct. 1063 (2006), an officer was attempting to arrest a suspect who was in a car that was stationary behind another vehicle at a traffic light in downtown Atlanta.  The officer reasonably believed the suspect had come to that location to collect the proceeds of a major drug transaction.  The officer was on foot in the two to four foot gap between the suspect's car and the vehicle ahead of it at the traffic light.  When the officer told the suspect to raise his hands, the suspect instead began rolling forward.  The Eleventh Circuit concluded that the officer had 2.72 seconds to shoot or take evasive action.  The court concluded the decision to shoot was reasonable.

In *Troupe v. Sarasota County, Fla.*, 419 F.3d 1160 (11th Cir. 2005), *cert. denied*, 126 S. Ct. 1914 (2006), a SWAT team was attempting to arrest a suspect on a felony warrant.  As officers knew, the suspect was on pretrial release on a charge of attempted murder, and his criminal history included 40 arrests and 19 convictions.  The suspect was known to have violent tendencies and to run from police.  The suspect locked himself in a car, refused officers' commands, and was driving toward officers who were on foot surrounding the car.  An officer shot him. The court said the officer could reasonably have believed that he and other officers were in imminent danger.

*Brosseau*, *Robinson*, and *Troupe* do not undermine the conclusion that, under *Vaughan*, Deputy Goodman is not entitled to summary judgment. The distinction is the risk of serious physical harm; there was a greater risk in *Brosseau*, *Robinson*, and *Troupe* than in *Vaughan*, and a greater risk in *Vaughan* than in the case at bar.[4]

Finally, it is true, as Deputy Goodman emphasizes, that Ms. Harrell was convicted in state court on charges arising from the events at issue. Deputy Goodman asserts those convictions establish the validity of his qualified immunity defense. Deputy Goodman invokes *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), under which a person convicted of an offense cannot properly pursue a §1983 action that explicitly or in effect challenges the validity of the conviction, unless and until the conviction is vacated. Whether based on *Heck* or principles of collateral estoppel, I readily assume that Ms. Harrell cannot properly pursue in this action claims inconsistent with facts essential to her

---

[4] Any argument that *Vaughan* did not survive *Brosseau* cannot succeed, at least in this court. *Robinson* and *Troupe*, which were decided after *Brosseau*, cited and quoted *Vaughan* at length without casting the slightest doubt on its continued validity. A district court in this circuit must continue to treat *Vaughan* as good law. And there is no reason to defer issuance of this order pending the Supreme Court's decision on review of *Harris v. Coweta County, Georgia*, 433 F.3d 807 (11th Cir. 2005), *cert. granted sub nom. Scott v. Harris*, 127 S. Ct. 468, 166 L. Ed. 2d 333 (Oct. 27, 2006). Any change that may result from the Supreme Court's decision in that case can be addressed in due course.

state court convictions.

Those convictions did not depend, however, on any finding that as of the time when she was shot, she "pose[d] a threat of *serious* physical harm, either to the officer or to others," or "that [she had] committed a crime involving the infliction or threatened infliction of *serious* physical harm," as required for the lawful use of deadly force. *Garner*, 471 U.S. at 11 (emphasis added). To the contrary, the Florida statutes under which Ms. Harrell was convicted required only "battery upon a law enforcement officer," §784.07(2)(b), Fla. Stat. (2003),[5] "knowingly and willfully resist[ing] . . . by offering or doing violence to the person of such officer," §843.01, Fla. Stat.,[6] and "attempt[ing] to elude a law enforcement officer [by] driv[ing] at high speed, *or* in any manner which demonstrates a wanton disregard for the safety of persons *or* property," §316.1935(3), Fla. Stat. (emphasis

---

[5] The offense of battery does not require actual or threatened *serious* injury or even any injury at all.

[6] Resisting an officer while offering or doing violence in violation of §843.01 does not require an offer of *serious* injury. Thus, for example, in *Wright v. State*, 681 So.2d 852 (5th DCA 1996), the court said that "offering violence" under §843.01 included struggling, kicking, and flailing one's arms without even striking the officer. The court suggested not at all that any risk of serious injury was essential to a conviction. Shooting a suspect who is merely kicking or flailing would hardly pass muster under *Garner*.

added).⁷

The driver of the fleeing vehicle in *Vaughan* could have been convicted of these same offenses, at least if they were offenses in Georgia and if the driver intentionally struck the officer's car. Though the Eleventh Circuit characterized the collision as inadvertent, the officer presumably could reasonably have believed otherwise, and qualified immunity turns not on the actual facts but on what an officer reasonably believes the facts to be. The fleeing suspects' conduct in *Vaughan* was more egregious than that of Ms. Harrell (at least on her version of the facts). Her guilt of the state offenses of which she was convicted does not suggest the contrary.⁸

Nor do Ms. Harrell's convictions speak to the issues of whether, at the time of the shooting, Deputy Goodman reasonably believed the use of deadly force was necessary *to prevent escape*, or whether he gave some warning about the possible

---

⁷ By its plain terms, this offense can be committed in any of three ways, and two—attempting to elude an officer by driving at high speed or in a manner demonstrating wanton disregard for the safety of *property*—do not require any risk of actual or threatened bodily injury, serious or otherwise.

⁸ To be sure, the state court charging document alleged that Ms. Harrell was dragging Deputy Goodman with her car. The truth of that averment was not, however, essential to the conviction, and the averment thus need not be accepted as true in the case at bar. There is evidence in this record on both sides of the issue. Ms. Harrell's version must be accepted as true for purposes of Deputy Goodman's summary judgment motion.

use of deadly force, if possible, as also required by *Garner*, 471 U.S. at 11-12.  A juror could conclude that a reasonable officer in a modern patrol car would know that without resorting to lethal force he could thwart the escape of a known suspect driving a Volkswagen with a flat tire.  And if, as the Eleventh Circuit said in *Vaughan*, giving a warning was feasible there, it may also have been feasible here.

For these reasons, and especially in light of *Vaughan*, Deputy Goodman is not entitled to summary judgment.  Accordingly,

IT IS ORDERED:

Defendant James Goodman's motion for summary judgment (document 12) is DENIED.

SO ORDERED this 9th day of March, 2007.

> s/Robert L. Hinkle
> Chief United States District Judge