# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

SUZANNE HARRELL,

      Plaintiff,

v.                                                              CASE NO.  4:06cv362-RH/WCS

LARRY CAMPBELL, etc., et al.,

      Defendants.

_____/

## ORDER DENYING MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A  NEW TRIAL

This action arises from a traffic stop in which a law enforcement officer shot and wounded a suspect who was attempting to flee by driving away.  The suspect claims the officer's use of force was constitutionally excessive.  After a full and fair trial, the properly instructed jury rejected the claim.  The suspect has moved for judgment as a matter of law and for a new trial.  I deny the motions.

## I

At about 11:00 p.m. on July 24, 2003, defendant James Goodman, a deputy sheriff, was patrolling a rural highway in a marked car.  He saw plaintiff Suzanne Harrell driving a Volkswagen Golf partly on the highway's shoulder.  The Golf

had a flat front tire.  There was little or no other traffic in the area.

Deputy Goodman stopped Ms. Harrell and told her she could not drive on a flat tire.  He asked for her driver's license.  She gave it to him.  After reviewing the license, Deputy Goodman believed Ms. Harrell might be the suspect who had fled a fellow officer the previous evening.  (As it turns out, Ms. Harrell *was* the same suspect.)  Deputy Goodman did not know whether there was an outstanding warrant for Ms. Harrell's arrest.  (As it turns out, there was an outstanding warrant for misdemeanor battery.)

Deputy Goodman asked Ms. Harrell for her keys.  She balked.  He reached into the car and attempted to grab the keys.  She resisted.  He sprayed her with a chemical.  She revved the engine and bolted forward with all the power the partly disabled Golf could muster.  He pulled his service revolver and squeezed off seven shots.  One hit Ms. Harrell in the back of her left arm near the shoulder.  Most of the shots missed the car entirely.  Ms. Harrell did not stop.

Deputy Goodman returned to his car and gave chase.  Ms. Harrell pulled over after driving about a mile.  Another officer arrived and arrested Ms. Harrell without further incident.

II

Ms. Harrell filed this action under 42 U.S.C. § 1983 alleging that Deputy Goodman used excessive force by spraying her and by shooting her.  Ms. Harrell named as defendants both Deputy Goodman in his individual capacity and the Sheriff of Leon County, Florida, in his official capacity.  The case proceeded to a separate trial by jury on the issue of whether Deputy Goodman used excessive force, in the expectation that, if Ms. Harrell prevailed, an additional trial would be conducted on the issues of damages and the Sheriff's official capacity liability.

The verdict form in the excessive-force trial required the jury to answer two questions.  The first asked, "Did Mr. Goodman use excessive force by spraying Ms. Harrell with a chemical?"  The second asked, "Did Mr. Goodman use excessive force by shooting Ms. Harrell?"  The jury answered "no" to both questions—a defense verdict.  The clerk entered judgment on the verdict.

Ms. Harrell has moved for judgment as a matter of law and for a new trial. Her primary argument is that the evidence does not support the verdict or that, at least, the verdict is against the weight of the evidence.  She also challenges a jury instruction, the verdict form, an evidentiary ruling, and the defense closing argument, but none of those were improper or affected the verdict.  This order addresses the arguments that warrant discussion.

III

Most of the facts were essentially undisputed.  Deputy Goodman asked for Ms. Harrell's keys, she did not provide them, he reached into the car in an attempt to grab the keys, she did not let him get them, he sprayed her, she revved the engine and drove forward, he shot seven times and hit her once.

There was, however, an important factual dispute.  On one view, Deputy Goodman was still leaning into the car when Ms. Harrell began driving forward, and he shot her through the open driver's side window as he was attempting to get clear of the car in order to avoid being run over.  On a second view, Deputy Goodman was clear of the car and thus out of danger but was still able to shoot Ms. Harrell through the open window.  On a third view, Deputy Goodman fired the critical shot from behind, through the rear windshield, as the car drove away.  A reasonable jury could have accepted any of these three views.

If the jury accepted the first view—that Deputy Goodman shot Ms. Harrell through the open driver's side window as he was attempting to get clear and avoid being run over—the jury reasonably could have concluded that the shooting was necessary to avoid a substantial risk of death or serious injury to Deputy Goodman himself and thus did not constitute excessive force.

This first view of the evidence is the one that this jury apparently accepted.

Resolving disputes of this type is the stuff of which jury trials are made.  The

manifest weight of the evidence did not require a different result.

In reaching this conclusion, I have not overlooked Ms. Harrell's assertion

that Deputy Goodman's arm was not "stuck" in the window.  This seems plainly

correct.  But a pedestrian need not be stuck in a car to be run over.  To the contrary,

a person leaning into a car is at substantial risk if the car accelerates, whether or

not the person is stuck.

I also have not overlooked the evidence that would support a contrary ruling.

Deputy Goodman fired seven shots, most of which missed the Golf entirely.  The

pattern of shells found on the ground strongly suggested he fired all seven shots

from about the same location.  There were two bullet entry holes in the Golf's rear

windshield (one on the driver's side and one on the passenger's side), a bullet hole

through the driver's headrest, a mark where a bullet struck the interior of the front

windshield on the driver's side but did not go all the way through, an exit hole on

the front windshield on the passenger's side, and a single blood stained bullet

found inside the car.  A seemingly reasonable explanation was that Deputy

Goodman missed the car with five shots, fired one bullet through the passenger

side of the car (making the entry and exit holes in the rear and front windshields,

respectively), and fired the other bullet—the critical bullet—through the back

windshield on the driver's side, through the driver's side headrest, through Ms.

Harrell's arm, and into the front windshield (where it did not go all the way

through, presumably because it had been slowed by the headrest and Ms. Harrell's

arm).

Still, despite this physical evidence, the jury was not required to find that the

shot that hit Ms. Harrell came from the rear.  Indeed, Ms. Harrell's position at trial

was that the shot did *not* come from the rear.  She said the wound in her arm was

inconsistent with the trajectory of a bullet traveling through the car from back to

front, and she introduced expert testimony in support of this position.  Ms. Harrell

asserted throughout the trial that the shot came through the open window.  A shot

through the open window could well have come from a deputy trying to get clear

of a car that still posed a real threat of running him over.  And while missing the

car five times hardly shows the level of control one expects of a law enforcement

officer, the poor marksmanship seems more consistent with an officer still trying to

get clear of the car than an officer who has escaped danger and is shooting at a

fleeing car from the rear.

IV

The jury instructions properly explained the issues and the governing law.

They were, of course, not intended as a comprehensive statement of excessive

force law fit for publication in a law review.  The instructions were, instead,

intended as an accurate statement that would allow this jury to do its job *in this*

*case*.  The instructions said:

> Ms. Harrell claims Mr. Goodman used excessive force against her
> during the traffic stop on July 24, 2003.  The defendants acknowledge
> that force was used, but say the force was not excessive.
>
> Before I address Ms. Harrell's claim in greater detail, let me
> note what is not at issue.  There is no claim that the traffic stop itself
> was improper, separate and apart from any use of excessive force.
> Mr. Goodman was entitled to stop Ms. Harrell because she was
> driving on a flat tire.  He was entitled to detain Ms. Harrell long
> enough to do three things:  first, to ensure that she would not continue
> driving on a flat tire; second, to check on whether she was the person
> who eluded another officer the prior day; and third, to check her
> identification and determine whether there were any outstanding
> warrants for her arrest.  As it turns out, after doing these things Mr.
> Goodman would have been entitled to arrest Ms. Harrell, based at
> least on an outstanding warrant for misdemeanor battery.
>
> So Mr. Goodman was entitled to stop and detain Ms. Harrell.
> The dispute is not over the stop and detention but over the use of
> force—specifically the use of a chemical spray and the firing of shots.
> The issue is simply whether Mr. Goodman's use of the spray and
> firing of shots were excessive.  Your verdict will be for Ms. Harrell if
> and only if you find by the greater weight of the evidence that Mr.
> Goodman did use excessive force.
>
> An officer may use a chemical spray against a person who is
> being detained when a reasonable officer would believe that the use of
> the spray—or a comparable level of force—is necessary to detain and
> secure the person under the circumstances.  Use of a chemical spray
> against a detained person is excessive if a reasonable officer would
> believe that, under the circumstances, the person could be detained
> and secured without using the spray or any comparable level of force.

> *An officer may shoot a person who is attempting to escape when a reasonable officer would believe that shooting the person is necessary to avoid a risk of serious injury or death, either to the officer or to others.  The risk must be significant and neither trivial nor remote.  Shooting a person who is attempting to escape is excessive if a reasonable officer would believe that, under the circumstances, the person posed no significant, nontrivial, non-remote risk of serious injury or death to anyone other than herself.*

A reasonable officer need not subject himself or the public to unnecessary risks.  An officer may instead resolve doubts on the side of security.

In determining whether a reasonable officer would believe a use of force necessary, you may consider the feasibility of giving warnings and the likely response.  Also, an officer need not choose the best or least forceful course of action, so long as he does not use excessive force as I have defined that term.

In determining whether excessive force was used, your focus should be partly on a reasonable officer—the test is the amount of force that a reasonable officer would believe necessary, not the amount of force that the actual officer using the force believed necessary.  But your focus also should be partly on what the actual officer using the force believed—the test is the amount of force that a reasonable officer would believe necessary under the facts and circumstances believed to exist by the actual officer using the force, whether or not the actual facts and circumstances were as the officer believed them to be.

Jury Instructions (document 111-2) at 5-8 (emphasis added).

Nothing about these instructions is inaccurate.  Indeed, Ms. Harrell did not

object to most of the instructions.  Thus, for example, Ms. Harrell did not, and still

apparently does not, disagree with the statement that "[a]n officer may shoot a

person who is attempting to escape when a reasonable officer would believe that shooting the person is necessary to avoid a risk of serious injury or death, either to the officer or to others."

Ms. Harrell does, however, take issue with the statement that "[t]he risk must be significant and neither trivial nor remote."  Ms. Harrell says the risk must also be "immediate" or "imminent."  This argument does not warrant a new trial for at least three reasons:  the instruction as given was correct; the omission of any requirement that the risk be "immediate" made no difference in the outcome of the trial; and, in one respect, Ms. Harrell failed to raise at trial the objection she now asserts.  This order addresses each of these three reasons in turn.

First, the instruction as given was correct.  An officer may use the force necessary to avoid a significant risk of serious injury or death to the officer or others.  The instruction recognized this.  The instruction also said the risk could not be "remote," a word that, in combination with "necessary," adequately conveyed the notion that the risk could not be unlikely or far removed from the situation at hand.  In at least one case, the Eleventh Circuit said that a risk that was not "immediate" but also was "not remote" warranted the use of deadly force.  *See Long v. Slaton*, 508 F.3d 576, 581-82 (11th Cir. 2007) (Edmondson, C.J.) (holding that an officer did not violate the Constitution when he shot and killed a suspect

even if the suspect posed no *"immediate"* threat:  "Protecting the innocent public

from risks that are *not remote* is a government interest") (emphasis added).  This is

the law of the circuit.

In arguing the law requires an "immediate" threat, Ms. Harrell quotes one of

the Supreme Court's leading cases on the use of deadly force:

> Where the suspect poses no immediate threat to the officer and no
> threat to others, the harm resulting from failing to apprehend him does
> not justify the use of deadly force to do so.

*Tennessee v. Garner*, 471 U.S. 1, 11, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985).  This

is a statement of one situation in which deadly force *cannot* be used, rather than a

comprehensive statement of all circumstances in which deadly force *can* be used.

And it bears noting that in this passage the modifier "immediate" deals only with a

threat to the officer; the Court's reference to a "threat to others" includes no

reference to "immediate."

Second, any difference between "immediate" and "not remote" plainly made

no difference in the outcome of this trial.  If shooting Ms. Harrell was "necessary"

to avoid a "significant" risk of "serious injury or death" to Deputy Goodman, the

risk was both immediate and not remote.  In arguing the contrary, Ms. Harrell reads

the word "necessary" out of the instructions.  The jury found the shooting

"necessary" to avoid a "non-remote" risk.  The jury surely would have found the

shooting equally necessary to avoid an "immediate" risk. Loading up the instructions with more adjectives would not have made a difference.

Third, Ms. Harrell preserved her current objection only in part. She did indeed request an instruction that any risk had to be immediate. But Ms. Harrell now goes further. She says in her new-trial motion that the instruction as given may have confused the jury into believing that a risk that had passed would nonetheless justify a shooting. Ms. Harrell did not make this objection at trial. And more importantly, the objection is plainly unfounded. Jurors simply are not as stupid as Ms. Harrell's argument suggests. The instructions clearly told the jury that shooting Ms. Harrell was excessive unless "necessary" to avoid a significant risk of serious injury or death. A shooting obviously is not necessary to avoid a risk that has passed.

A new trial is not warranted based on the jury instructions.

V

The verdict form required the jury to answer one question to determine liability for the shooting. The question asked, "Did Mr. Goodman use excessive force by shooting Ms. Harrell?" The jury answered no. Ms. Harrell says the verdict form was defective because it took no account of the possibility that the shot that actually struck Ms. Harrell was proper—that is, that shooting Ms. Harrell

was not excessive force—but that the firing of *additional shots that missed* was nonetheless excessive.

This is far removed from reality.  If shooting and hitting Ms. Harrell was not excessive, then—as a practical matter if not as a matter of precise logic—shooting and missing also was not excessive.  This seems so obvious that explanation would not seem necessary.  But Ms. Harrell makes the assertion with such vigor that three defects in the argument should be mentioned.

First, the assertion seems to be that even if it was proper to shoot Ms. Harrell as she fled, she suffered a constitutional violation when one or more additional shots were fired that missed.  In fact, however, all the shots were fired very quickly.  An officer who is justified in using deadly force need not limit himself in the heat of the battle to just one shot; he can shoot until the risk passes.  And from the suspect's viewpoint, there is little difference between being shot and hit and continuing to flee, on the one hand, and being shot and hit and continuing to flee as additional shots are fired that miss, on the other hand.  Thus, while it is theoretically possible that shooting Ms. Harrell was proper but that the risk had passed by the time Deputy Goodman fired one or more additional shots that missed, the assertion is more academic than real.  More importantly, such a claim could not survive an individual officer's qualified immunity (because the

applicable law on additional shots in these circumstances was not clearly

established) and would provide no basis for holding the Sheriff liable in his official

capacity (because the additional shots did not derive from an official policy or

practice).

Second, if these facts were tried 10,000 times and 10,000 juries were asked

separately whether actually shooting Ms. Harrell was excessive and whether

shooting and missing was excessive, it seems unlikely that there would be a single

jury in the bunch that would find that the actual shooting was *not* excessive but that

shooting and missing *was* excessive.  The assertion is that far off.  Again, Ms.

Harrell's contention is more academic than real.

Third, and perhaps more importantly, jury trials are not academic games

where encumbering the instructions and verdict form with farfetched possibilities

adds to the puzzle but does no harm.  To the contrary, jury trials are best when they

focus on contentions that matter—when the attorneys and jurors focus on the

forest, not the trees.  The instructions and verdict form in the case at bar did that.

Adding instructions and a question on the verdict form to deal with Ms. Harrell's

claim that shooting her was constitutional but firing additional shots was not would

have introduced a risk of confusion and would have interfered with the proper

presentation of the case.

The verdict form presented the issues clearly and directly.  Ms. Harrell lost not because the verdict form was inadequate, but because the jury resolved the factual disputes against her.

## VI

Ms. Harrell pled guilty to state charges arising from the events at issue.  The charges included battery on a law enforcement officer, resisting an officer with violence, and fleeing from or attempting to elude an officer.  I denied Ms. Harrell's motion in limine seeking to exclude any mention of these convictions.  I also made clear to the jury, however, that the convictions did not authorize Deputy Goodman to use excessive force.  These rulings were proper.

Ms. Harrell testified at the trial.  Under Federal Rule of Evidence 609(a)(1), the convictions were admissible for impeachment, subject to Rule 403.  I determined, as a matter of discretion, that the probative value of the convictions was not outweighed by any danger of unfair prejudice, and I therefore did not exclude the evidence under Rule 403.

In addition, a guilty plea is, in effect, a statement that, "I committed the charged crime."  Or at least so a jury could find.  Had Ms. Harrell said in casual conversation, "On the night at issue, I resisted arrest with violence, committed a battery on Deputy Goodman, and fled from him," the statement plainly would have

been admissible, both as substantive evidence (*see* Federal Rule of Evidence 801(d)(2) (defining hearsay as not including a statement of a party opponent)), and for impeachment (*see* Federal Rule of Evidence 613 (allowing impeachment of a witness by a prior statement)).  That Ms. Harrell made the statement in the state court rather than in casual conversation did not make the statement inadmissible.

Ms. Harrell complains, though, that she was not allowed to testify to the elements of the state crimes in order to show that her guilt of those crimes did not necessarily mean she did what the defendants claim in the case at bar.  That is just not so.  Ms. Harrell was free to explain her guilty plea in any way she chose, including by explaining the elements of the state offenses as she understood them.  Her attorney was not free, however, in effect to testify on her behalf, by asking extraordinarily leading questions that would explain his theory regardless of whether Ms. Harrell even understood the theory.  What mattered—what was relevant—was what Ms. Harrell meant when she said in effect that she was guilty of the state offenses.  I sustained objections to leading questions but did not otherwise limit Ms. Harrell's testimony on this subject.

In the jury instructions, I made clear the use the jury could properly make of Ms. Harrell's guilty plea:

> You have heard evidence that Ms. Harrell pled guilty to criminal charges related to her conduct on the evening of July 24,

2003.  You may consider her plea as a statement she made about the events at issue—in effect, a statement that she committed the offenses with which she was charged, as she understood them.  You may also consider her explanation of the plea.  As with the other evidence in the case, you may believe or disbelieve the prior statement—that is, the plea—in whole or in part.  *You should note, however, that the issue in this case is not whether Ms. Harrell is or is not guilty of the offenses with which she was charged.  The issue is whether Mr. Goodman used excessive force against Ms. Harrell as I have defined that term.  An officer may use reasonable force—but not excessive force—against a person who commits an offense.*

Jury Instructions (document 111-2) at 8 (emphasis added).

Admission of evidence of Ms. Harrell's convictions was proper.  A new trial is not warranted on this basis.

VII

Finally, Ms. Harrell complains of various statements by defendants' attorney.  Ms. Harrell made no contemporaneous object to most or all of the statements of which she now complains.  And none affected the trial.

In closing argument, the attorney said it was better to be tried by 12 than carried by six.  Ms. Harrell says this was inflammatory.  But the whole issue at trial was whether Deputy Goodman's life was in peril.  It was perfectly appropriate for defendants' attorney to refer to the possibility that Deputy Goodman would be killed.  Doing so in an interesting fashion was not improper.  No rule requires a closing argument to be boring.

Ms. Harrell's other complaints about the closing argument are equally unfounded.

## VIII

After a full and fair trial, the properly instructed jury ruled that Deputy Goodman's use of force was not excessive.  Ms. Harrell is not entitled to judgment as a matter of law or a new trial.  For these reasons,

IT IS ORDERED:

The plaintiff's motions for judgment as a matter of law (documents 116 and 130) and for a new trial (documents 117 and 129) are DENIED.  The clerk shall enter judgment stating, "All of the plaintiff's claims against all of the defendants are dismissed with prejudice."  The defendant sheriff's motion for summary judgment (document 115) is DENIED AS MOOT.

SO ORDERED this 7th day of May, 2008.

s/Robert L. Hinkle
Chief United States District Judge